IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| YANIRA AVILA SANTOS | : | CIVIL ACTION |
| v. | : | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security | : | NO. 17-5591 |

O P I N I O N

JACOB P. HART  DATE:  December 18, 2018
UNITED STATES MAGISTRATE JUDGE

    Yanira Avila Santos brought this action under 42 USC §405(g) to obtain review of the decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  She has filed a Request for Review to which the Commissioner has responded.  As set forth below, I will remand this matter to the Commissioner for a full consideration of the evidence of record regarding Avila Santos's limitations resulting from her mental impairments, and the taking of new evidence from a vocational expert using hypothetical questions that address in more detail her impairment in concentration.

I.    <u>Factual and Procedural Background</u>

    Avila Santos was born on October 13, 1975.  Record at 172.  She completed high school and two years of college.  Record at 225.  In the past, she worked as a legal assistant and as a home health aide.  Record at 39-40, 62.  On October 3, 2013, Avila Santos filed an application for DIB.  Record at 172.  (Her application for SSI was filed later, on October 14, 2014; Record at 180).  In her applications, Avila Santos alleged disability since July 27, 2013, as a result of depression, anxiety, nerve damage to her hands, and neck and back pain due to disc herniation.  Record at 224.

Avila Santos's applications were denied initially and upon reconsideration. Record at 103, 109. On July 9, 2014, she requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). Record at 112.

A hearing took place in this case on March 22, 2016. Record at 33. On April 23, 2016, however, the ALJ denied benefits. Record at 11. The Appeals Council denied Avila Santos's request for review on June 1, 2017, permitting the ALJ's decision to stand as the final decision of the Commissioner. Record at 1.

II.     Legal Standards

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence viewed objectively as adequate to support a decision. Richardson v. Perales, supra, at 401; Kangas v. Bowen, 823 F.2d 775 (3d Cir. 1987); Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979). Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards. Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration

2

requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (iv). At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v). At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 CFR §404.1520 (references to other regulations omitted).

III.  The ALJ's Decision and Avila Santos's Request for Review

In his decision, the ALJ determined that Avila Santos suffered from the severe impairments of a back disorder, affective disorders, and obesity. Record at 16. He found that no impairment or combination of impairments met or medically equaled a listed impairment. Record at 17.

The ALJ concluded that Avila Santos retained the residual functional capacity ("RFC") to engage in light work, except that she could lift and carry no more than 20 pounds occasionally and ten pounds frequently; could perform only occasional postural maneuvers, except that she could never climb ropes, ladders or scaffolds; she could perform frequent balancing, fingering, and head turning; she could only occasionally raise her arms above her shoulders; and was limited to unskilled work with only occasional interaction with supervisors, co-workers, and the general public. Record at 18.

In reliance upon the vocational expert who appeared at the hearing, the ALJ decided that Avila Santos could not return to her prior work, but that she could work as an addresser, document preparer, or final assembler. Record at 26. He concluded, therefore, that she was not disabled. Record at 26-7.

3

In her Request for Review, Avila Santos argues that the ALJ wrongly rejected not only the evidence of her treating physicians, but of the consulting agency mental health expert. She also argues that he wrongly assessed her testimony. Finally, Avila Santos argues that the ALJ relied on vocational testimony in response to inadequate hypothetical questions which did not include all of her impairments.

IV. Discussion

A. The Medical Evidence

1. Avila-Santos's Part-time Work

When Avila Santos applied for benefits in October, 2013, she was still working sixteen hours per week as a home health aide. Record at 41, 59. She stopped working after a June, 2014 neck surgery. Record at 59. She asserts that the ALJ unfairly rejected the opinions of all medical experts solely on the basis of her part-time work.

Avila Santos is undoubtedly correct that the ability to do part-time work does not automatically result in a denial of benefits. As she has pointed out, a claimant can be denied benefits only on the basis that he or she can perform full-time work:

> RFC is the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days in a week, or an equivalent work schedule.

SSR 96-8p.

Further, disability is defined by the Social Security Act as the inability to engage in any "substantial gainful activity" by reason of an impairment lasting – or expected to last – for a continuous period of twelve months. 42 USC §423(d)(1). Part-time work can be considered substantial and gainful activity, or "SGA." 20 CFR §404.1572. Here, however, the ALJ specifically found that Avila Santos' part-time work was not SGA. Record at 16.

4

Nevertheless, the regulations state: "even if the work you have done was not substantial gainful activity, it may show that you are able to do more than you actually did." 20 CFR §404.1571. For this reason, an ALJ can appropriately consider a claimant's part-time work as an element in the determination as to whether she can perform full-time work. Halsey v. Commissioner of Social Security, 2016 WL 6304444 at *7 (D.N.J. 2016), citing Schade v. Colvin, 2014 WL 320133 (W.D. Pa. Jan. 29, 2014), and Russo v. Astrue, 421 Fed. Appx. 184, 189 (3d Cir. 2011) ("work done during alleged disability period may show that claimant can work at substantial gainful activity").

Thus, although Avila Santos's part-time work does not permit a *per se* finding that she was not disabled, it is one factor which the ALJ was entitled to consider. Whether his use of this evidence was appropriate depends upon its context in consideration of rest of the evidence of record.[1]

2. The Physical Impairments

As the ALJ acknowledged, objective medical testing from 2013 established that Avila Santos had abnormalities of the lumbar and cervical spine. Record at 19. An April 8, 2013, MRI of the cervical spine showed herniation at C4-C5 and C5-C6 with mild stenosis. Record at 403. An MRI of the lumbar spine performed on the same day revealed a disc herniation at L5-S1. Record at 405.

---

[1] Avila Santos has cited four cases from the Seventh Circuit in which part-time work was said not to be probative of the ability to do full-time work. These cases are not binding here. Three of them are also clearly distinguishable. In both Vanprooyen v. Berryhill, 864 F.3d 567, 571 (7th Cir. 2017), and Roddy v. Astrue, 705 F.3d 631, 638 (7th Cir. 2013) the part-time work was not probative because (among other things) it took place *before* the claimant's alleged disabled date. In Larson v. Astrue, 615 F.3d 744, 752 (7th Cir. 2010), the claimant's employer was a friend who made special accommodations. In Goins v. Colvin, 764 F.3d 677, 679 (7th Cir. 2014), the Court wrote: "We have explained that 'even persons who are disabled sometimes cope with their impairments and continue working long after they might have been entitled to benefits.'" However, it does not appear that the Third Circuit has ever taken this approach.

As noted, on June 10, 2014, Avila Santos underwent a cervical discectomy and fusion. Record at 433. In a letter opinion, her surgeon, Louis Quartararo, MD, wrote that, even with successful treatment, her "spine [would] never be the same." Record at 724. He wrote that the disabling effects of her injuries "will be aggravated by daily activities [so] that she may need to significantly modify her lifestyle with a conscious regard for these conditions." Id. He did not, however, quantify her limitations.

In a disability impairment questionnaire dated March 28, 2016, Bozema Bitner, MD, Avila Santos's general practitioner, opined that Avila Santos could "perform a job in a seated position" for less than one hour per day, and could "perform a job standing and/or waking" also for less than one hour. Record at 786. She could occasionally lift or carry five pounds or less, but could never lift or carry more than five pounds. Id. She could never use her right hand to grasp, turn or twist objects; use either hand for fine manipulation; or use either arm for reaching overhead. Record at 785. Further, according to Dr. Bitner, Avila Santos would be absent more than three times in a month as a result of impairments. Record at 787.

The ALJ wrote:

> I have considered the opinion of Dr. Bitner who noted the claimant could not perform even sedentary work and was limited with fine manipulation reaching with the arm, etc., and give this opinion some weight. The doctor's opinion regarding the claimant's ability to reach and perform fine manipulations is consistent with the claimant's testimony and the medical evidence; however, the finding that she cannot perform even sedentary work is again negated by the fact that she is working part time.
>
> I have also considered the opinion of Dr. Quartararo who reported that the claimant had permanent residual functional disability, but while he indicated that her condition was permanent, he did not state that she was completely unable to work.

Record at 24.

The ALJ also cited a report of electrophysiological testing conducted on May 30, 2013, by Sammy Masri, MD, a sports medicine specialist. Record at 25. Dr. Masri found nerve root irritation at C6-C7, but only advised Avila Santos to avoid heavy lifting, extreme exercising and "other provoking activities leading to worsening pain." Record at 318. The ALJ further noted that, on August 26, 2015, Avila Santos was found by Sushama Mody, MD, a rheumatologist, to have a normal range of motion, even in her neck. Record at 23, 654.

In short, although Avila Santos had a lengthy history of treatment for pain and stiffness in her lumbar and cervical spine, the bulk of the medical evidence does not show that her physical limitations were as extreme as those indicated by Dr. Bitner. As a long-time treating physician, Dr. Bitner's opinions were entitled to enhanced weight, under the regulations governing cases filed on the date of Avila Santos's application. 20 CFR §404.1527(c)(2). However, Dr. Bitner was a general practitioner, while Drs. Mody, Masri and Quartararo were treating sources who were also specialists. Their opinions were entitled to enhanced weight for this reason. 20 CFR §404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist").

In this context, it was logical for the ALJ to conclude that Avila Santos's ability to work part-time also undermined Dr. Bitner's findings. The vocational expert testified that Avila Santos's work as a home health aide was performed at the medium exertional level. Record at 62. Even part-time work at that level was clearly inconsistent with Dr. Bitner's opinion that she could neither sit nor stand for even one hour in a workday, or lift more than five pounds. Thus, the ALJ did not misuse the evidence of part-time work in concluding that Avila Santos was physically able to engage in a limited range of light work.

7

3. <u>The Mental Impairments</u>

Regarding Avila Santos's mental impairments, the record contains treatment notes from psychiatrist Roberto Sozzi, MD, from April 30, 2013, to November 18, 2014. Record at 610-645. It also contains a Mental Impairment Questionnaire Sozzi completed on December 15, 2014. Record at 646. In the notes from his initial evaluation, Dr. Sozzi diagnosed Avila Santos with post-traumatic stress disorder following a motor vehicle accident, and a major depressive disorder. Record at 645. He wrote:

> No evidence of thought disorder, delusions or hallucinations. No evidence of suicidal ideation. Residual intrusive recollections about the circumstances of the accident with physiological hyper reactivity. Mood swings, irritability, short temperedness, frustration intolerance, recurrent flashback episodes, phobic avoidant behavior, social isolation. Language fluency and comprehension preserved. Insight and judgment preserved.

<u>Id</u>.

In the December, 2014, questionnaire, however, Dr. Sozzi listed diagnoses of bipolar disorder and PTSD. Record at 646. He gave Avila Santos a global assessment of functioning ("GAF") score of 40, which indicates some impairment in reality testing or communication. <u>Id</u>. Dr. Sozzi indicated that Avila Santos was markedly limited in most areas regarding concentration, social interactions, and adaptation. Record at 649. In all areas in which she was not markedly limited, she was moderately limited. <u>Id</u>. He indicated that she was likely to be absent more than three times per month as a result of her mental impairments. Record at 650.

The ALJ set forth Dr. Sozzi's findings, but his only comment was: "I note the limited GAFs of 40 and marked limitations given by Dr. Sozzi, but again note the claimant is working part time which negates such significant limitations." Record at 24.

8

I agree with Avila Santos that the mere fact of her part-time work is inadequate to support a rejection of Dr. Sozzi's report. As above, this work was certainly a factor the ALJ was entitled to consider – but because it does not *per se* show the ability to work full time, it could not the sole basis for the ALJ's decision. It is far from impossible that a mentally ill claimant could be capable of sixteen hours of work per week, but not of forty.

The ALJ did not discuss Dr. Sozzi's treatment notes. As a whole, they support the questionnaire responses. Dr. Sozzi nearly always described Avila Santos's as having a "dismodulated affect." Record at 613, 614, 615, 616-620, 625, 627, 628, 630-633, 635, 638-641 and 643. This appears to mean that she had abnormalities of affect such as "intense autonomic arousal, hypervigilance and physiological hyper reactivity," or "exaggerated startle response" and "fearful expectation of danger." Record at 627, 630.

Even the more recent notes show impaired functioning, with observations such as: "residual impairment in cognitive functioning and executive functioning," "insight and judgment impaired under stress," and "persistent psychotic activity when patient stops medication." Record at 613 (June 25, 2014), 614 (May 29, 2014). On March 19, 2014, Dr. Stozzi noted "recurrent mood swings with impairment in sense of reality when exposed to stressor reminders." Record at 617. The fact that Dr. Stozzi wrote on March 5, 2014: "Preserved initiative and ambition for daily essential tasks", suggests that Avila Santos was not always up to her daily essential tasks. Record at 618.

The record also contains a psychological evaluation conducted on March 20, 2014, by Steven Yalkowsky, a Ph.D., a consulting expert. Record at 429. Dr. Yalkowsky wrote:

> Ms. Santos came across as rather disorganized and had difficulty presenting information. In this regard, she frequently contradicted herself and therefore, is limited in terms of her value as an informant. In addition, at times, she was rather dramatic and tangential. Ms. Santos did, however, engage in typical reciprocal social interaction and appeared to

9

appreciate the opportunity to interact. … Ms. Santos came across as sad and perhaps somewhat anxious during the session. With regard to communication function, again, as previously indicated, her speech was disorganized, tangential and at times, contradictory. She was, however, able to comprehend most communications with perhaps some need for occasional clarification or elaboration.

Record at 430.

In a section titled "Assessment of Severity," Dr. Yalkowsky wrote:

Ms. Santos reports moderate impact in terms of activities of daily living and endorses symptoms including depression, sleep difficulties, suicidal thoughts, equipped irritability and crying and social isolation. In addition, she reports psychotic symptoms such as hallucinations and expressed some religious fixation and possible delusional [*sic*] during the session. Ms. Santos also suffers from panic attacks and often has violent dreams during which she is stabbing somebody. In this regard, she presents with a history of violent and impulsive behavior as well as blackouts. That being said, Ms. Santos is able to hold a part-time competitive employment position at this time and with proper treatment, could achieve improved functional capacity.

Record at 431.

Strangely, although the ALJ summarized Dr. Yalkowsky's report, he made no comment on it. Record at 23. It is impossible to say how much weight he gave it, or if he considered it at all. The report does not support the ALJ's conclusion. Although Dr. Yalkowsky predicted that Avila Santos could "with proper treatment" achieve improved functional capacity, this was speculation about the future. It implies that she was not capable of full-time work on the day he saw her.

Thus, the ALJ disregarded all of the medical opinion evidence regarding Avila Santos's mental limitations solely on the basis that she worked part-time until June, 2014. This was error. See SSR 96-8p. Accordingly, this matter shall be remanded to the Commissioner for a more complete analysis of the medical record regarding Avila Santos's mental impairments, at least including analysis of Dr. Yalkowsky's evidence. The parties should be permitted to be heard on

this issue, at minimum, via submissions. See Thomas v. Commissioner of Social Security, 625 F.3d 798 (3d Cir. 2010).

B.     Avila Santos' Testimony

Avila Santos argues that the ALJ wrongly failed to credit her testimony. She argues: "As a layperson, he was simply not qualified to conclude that the MRI findings and selected clinical evidence were not sufficient to support Ms. Santos' allegations regarding her physical impairments." Plaintiff's Brief at 35.

This is a gross misstatement of the powers of an ALJ. The regulations provide that a subjective claim of pain or some other limitations cannot be rejected solely on the basis that objective medical evidence does not support the claim. 20 CFR §§404.1529(c)(2) and 416.929(c)(2). However, that does not mean the evidence should not be considered. The very same regulations specify that objective medical evidence is "a useful indicator to assist" the Commissioner "in making reasonable conclusions about the intensity and persistence" of a claimant's symptoms. Id. Here, as Avila Santos concedes, the ALJ relied not only upon the objective medical evidence, but also upon her daily activities.

Indeed, Avila Santos also argues that the ALJ should not have found her statements unsubstantiated on the basis of her activities of daily living. Here again, she is correct to the extent that a claimant should not automatically be found able to work just because she is capable of limited and/or sporadic activity. Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988); Smith v. Califano, 637 F.2d 968, 971 (3d Cir. 1981) ("Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity").

Nevertheless, the Social Security regulations specifically empower an ALJ to consider daily activities in assessing symptom severity. 20 CFR §404.1529(c)(3)(i) and 416.929(c)(3)(i). In Turby v. Barnhart, the Court of Appeals for the Third Circuit remarked in a non-precedential case, "Although certainly '[d]isability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity,' it is nonetheless appropriate for the ALJ to consider the number and type of activities in which the claimant engages." 54 Fed. Appx. 118, 122 n. 1 (3d Cir. 2002) (internal citations omitted); and see Flores v. Commissioner of Social Security, Civ. No. 15-6356, 2016 WL 4689948 at *14 (D.N.J. Sep. 6, 2016).

Thus, the ALJ was entitled to note that Avila Santos was "able to do limited food shopping, cooking and grooming," and that she told Dr. Yalkowsky that "she was able to attend church regularly and [perform] basic tasks." Record at 24, 430. However, in evaluating Avila Santos's testimony, he also relied heavily on her part-time work.

Again, this is particularly notable regarding Avila Santos's mental limitations. The ALJ wrote: "The claimant testified that she does not have visitors and no longer attends church. She has issues with being around large groups of people; however, she is working part time." Record at 17. Further, "The claimant reported being able to follow written and spoken instructions with some limitations and that she does not handle stress or changes in routine well; however, as noted, she is working part time." Record at 17-18. It would be useful if, upon remand, the ALJ were to specify exactly what he finds Avila Santos's part-time work to prove, and why.

C.	The Vocational Expert Testimony

Finally, Avila Santos argues that the ALJ was not entitled to rely upon the vocational expert's testimony, because the hypothetical questions upon which it was based failed to reflect all of her impairments, as required by Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005), and similar cases. Specifically, she argues that the ALJ did not include limitations in his RFC assessment which corresponded to the moderate difficulties he found her to suffer in social functioning and in concentration.

It is apparent that the ALJ's limitation of Avila Santos to unskilled work was intended to address her difficulty in concentration; and that his limitation to work with only occasional interaction with supervisors, co-workers and the public was intended to address her difficulty in social functioning. Whether this was sufficient is unclear. In this district, a wide variety of language has been found acceptable to address an impairment in concentration. Winters v. Commissioner of Social Security, Civ. No. 15-1357, 2015 WL 8489958 at *10 (D.N.J. Dec. 9, 2015), and cases cited therein. However, it has never been decided that a mere limitation to "unskilled" work is adequate.

Upon remand, therefore, the ALJ should obtain additional testimony from a vocational expert by means of hypothetical questions which address her concentration impairment in more detail.

V.	Conclusion

In accordance with the above discussion, I conclude that the decision of the ALJ should be reversed in part, and the matter remanded to the Agency for a full consideration of the evidence of record regarding Avila Santos's limitations resulting from her mental impairments, and the taking of new evidence from a vocational expert using hypothetical questions that address in more detail her impairment in concentration.

BY THE COURT:

/s/ Jacob P. Hart

_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE